United States District Court
Southern District of Texas
**ENTERED**
May 26, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|   Plaintiff, | § | |
| | § | |
|       v. | § | CRIMINAL NO. 2:14-728-1 |
| | § | |
| JUAN PEDRO BECERRA, JR, | § | |
|   Defendant. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Juan Becerra, Jr.'s Emergency Motion to Reduce the Term of Imprisonment Under Title 18 U.S.C. Section 3582(c)(1)(A)(i) (D.E. 156), to which the Government has responded (D.E. 159). For the reasons stated herein, Defendant's motion is **DENIED**.

## I. BACKGROUND

On March 30, 2011, Defendant was the driver and sole occupant of a tractor pulling a tanker that arrived at the U.S. Border Patrol Checkpoint near Falfurrias, Texas. Concealed inside a load of drilling mud, agents located 212 bundles of marijuana weighing 1,862.25 kilograms. Defendant was charged with possession with intent to distribute more than 1,000 kilograms of marijuana, but the case was dismissed without prejudice.

Between November of 2012 and September of 2014, Defendant was stopped driving a commercial tractor-trailer at the same Falfurrias Border Patrol Checkpoint on four separate occasions. The first three times, a total of 18 undocumented aliens were found hiding in cars he was transporting on a car carrier trailer. Each time, prosecution was declined. He was finally charged with conspiracy to transport unlawful aliens in the above-

captioned case in September of 2014, after eight aliens were found hiding in the sleeper compartment of his tractor. He was convicted by a jury and sentenced to 33 months' imprisonment in June of 2015.

While Defendant was serving his sentence in the instant case, a cooperating co-conspirator (CC) told agents that from January through March of 2011, Defendant was employed as a driver for the Banda Drug Trafficking Organization. The CC admitted that he/she offered to pay Defendant $30,000 to transport thousand-pound loads of marijuana back in 2011, and that Defendant accepted and transported two successful loads of marijuana to Houston, Texas, before his arrest on March 30, 2011.

In August of 2015, Defendant was charged in Case No. 2:15-cr-742-2(S) with conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana and possession with intent to distribute 1,862.25 kilograms of marijuana on March 30, 2011. He pled guilty to the conspiracy charge in May of 2016. The total amount of marijuana attributed to the conspiracy was at least 32,585.5 kilograms, and Defendant was held responsible for 3,454.45 kilograms. He was sentenced in October of 2016 to the mandatory minimum term of 120 months, to be served concurrently with his undischarged term of imprisonment in the instant case. He has a projected release date, after good time credit, of December 25, 2023.

On April 30, 2020, Defendant filed a motion for immediate release to home confinement in Case No. 2:15-cr-742-2(S) because his underlying medical conditions made him particularly vulnerable to severe illness or death should he contract COVID-19 while in prison. 2:15-cr-742-2(S), D.E. 167. The Court denied the motion because he had

provided no evidence in support of his claims and had not exhausted his administrative remedies within the Bureau of Prisons. *Id.*, D.E. 168. Defendant thereafter filed a motion to reconsider and offered medical records, his current prison disciplinary history, and evidence that he had filed an administrative request for home confinement due to his COVID-19 concerns. *Id.*, D.E. 169. The Court denied the motion by written Memorandum Opinion & Order entered August 13, 2020, reasoning that: (1) while Defendant claimed to seek release to protect himself from contracting COVID-19, his medical records showed that he had previously recovered from an asymptomatic COVID-19 infection, and (2) a sentence reduction would be inconsistent with the factors set forth in 18 U.S.C. § 3553(a). *Id.*, D.E. 173.

In his current motion, Defendant moves the Court to reduce his sentence to time served or order his release to home confinement because: (1) he has been diagnosed with COVID-19 twice while incarcerated; (2) he has suffered from COVID-19 "long hauler symptoms" for more than a year, but FCI Lompoc has withheld medical treatment and classifies him as fully recovered; and (3) his underlying medical conditions make him particularly vulnerable to severe illness or death should he contract COVID-19 a third time. The Government opposes compassionate release because Defendant has failed to demonstrate that extraordinary and compelling reasons warrant his release, that he is not a danger to the safety of the community, or that he otherwise merits release under 18 U.S.C. § 3553(a).

3

## II. LEGAL STANDARD

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's

sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.**—The court may
> not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons,
>>> or upon motion of the defendant after the defendant has fully
>>> exhausted all administrative rights to appeal a failure of the Bureau
>>> of Prisons to bring a motion on the defendant's behalf or the lapse of
>>> 30 days from the receipt of such a request by the warden of the
>>> defendant's facility, whichever is earlier, may reduce the term of
>>> imprisonment (and may impose a term of probation or supervised
>>> release with or without conditions that does not exceed the unserved
>>> portion of the original term of imprisonment), *after considering the*
>>> *factors set forth in section 3553(a) to the extent that they are*
>>> *applicable, if it finds that—*
>>>> (i) *extraordinary and compelling reasons warrant such a*
>>>> *reduction . . . and that such a reduction is consistent with*
>>>> *applicable policy statements issued by the Sentencing*
>>>> *Commission.*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

The Fifth Circuit previously considered U.S.S.G. § 1B1.13 an applicable policy

statement when a prisoner, rather than the Bureau of Prisons (BOP), moved for relief under

§ 3582(c)(1)(A)(i). *United States v. Coats*, 853 F. App'x 941, 942 (5th Cir. 2021). In

*Shkambi*, however, the Fifth Circuit "joined [its] sister circuits in holding that § 1B1.13

does not actually apply to § 3582(c)(1)(A)(i) motions brought by the inmate." *Id.* (citing

*United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021) ("Neither the [U.S. Sentencing

Commission's compassionate-release] policy statement nor the commentary to it binds a

district court addressing a prisoner's own motion under § 3582.")). Although "not

4

dispositive," the commentary to U.S.S.G. § 1B1.13 nonetheless "informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, 833 Fed. App'x 556, 556 (5th Cir. 2020)).[1]

Even if "extraordinary and compelling reasons" for early release exist, the Sentencing Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense

---

1.  **(A) Medical Condition of the Defendant. –**
    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (ii) The defendant is—
    (I) suffering from a serious physical or medical condition,
    (II) suffering from a serious functional or cognitive impairment, or
    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    **(B) Age of the Defendant. –**
    The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;

    **(C) Family Circumstances. –**
    (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

    **(D) Other Reasons. –**
    As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

    U.S.S.G. § 1B1.13(1)(A), Application Note 1.

is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

"If the district court makes those two findings"—both that extraordinary and compelling reasons warrant a sentence reduction *and* that a reduction is consistent with the applicable Guidelines' policy statements—"then the court 'may' reduce the defendant's sentence 'after considering the factors set forth in section 3553(a) to the extent that they are applicable.'" *Ward v. United States*, 11 F.4th 354, 359–60 (5th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). The applicable § 3553(a) factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities among similarly-situated defendants; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7). "The district court has discretion to deny compassionate release if the Section 3553(a) factors counsel against a reduction." *Ward*, 11 F.4th at 360.

"[T]he burden falls on the defendant to convince the district judge to exercise discretion to grant the motion for compassionate release . . . ." *Id.* at 361 (internal quotations and alterations omitted); *see also United States v. Stowe*, 2019 WL 4673725, at *2 (S.D.

Tex. Sept. 25, 2019) ("In general, the defendant has the burden to show circumstances meeting the test for compassionate release.").

> With respect to motions for compassionate release based on COVID-19:
>
>> A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

>> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.
>>
>> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

## III. ANALYSIS

### A. COVID-19 Concerns

Defendant has been diagnosed with COVID-19 twice while incarcerated. As noted above, he remained asymptomatic during his first infection in May of 2020. He claims that

he reported various symptoms during his second bout with COVID-19 in January of 2022, but prison medical staff classified him as asymptomatic and refused to provide medical treatment. He also maintains that he has been suffering from "COVID long hauler" symptoms for over a year, including headaches, body aches, extreme fatigue, brain fog, rapid heartbeat, and random painful body cramps.

Defendant's medical records belie his claims that staff ignored his complaints and deemed him asymptomatic during his second COVID-19 infection in January of 2022, or that he continues to experience "long hauler" symptoms from his first infection. Records indicate that Defendant tested positive for COVID-19 on January 1, 2022. D.E. 159-3, p. 82. He was placed in isolation, and his symptoms, vital signs, and $O_2$ saturation levels were monitored daily by medical staff. He reported body aches and a sore throat on January 2; a cough, body aches, sore throat, headache, and loss of taste or smell on January 3; and a sore throat on January 4. *Id.*, pp. 47–50. By January 5, all his symptoms were resolved. *Id.*, p. 46. According to records from a February 24, 2022 consultation with a private specialist regarding an unrelated medical condition, Defendant reported that he "had COVID on 2 occasions with mild symptoms." *Id.*, p. 91. His lungs were clear, his heartrate was normal, and he denied fatigue, body pain, or other neurological symptoms. *Id.* at 90–91.

Defendant further argues that his underlying medical conditions (type 2 diabetes, hypertension, hyperlipidemia, hypothyroidism, and obesity) make him particularly vulnerable to severe illness or death should he contract COVID-19 a third time. According to the Centers for Disease Control and Prevention's (CDC) most recent COVID-19 risk factor list, type 2 diabetes, obesity, and possibly hypertension "can make you more likely

to get very sick from COVID-19." *See People with Certain Medical Conditions*, CDC (Feb. 25, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant, however, received his first dose of the COVID-19 Moderna vaccination on April 12, 2021, and his second dose on May 12, 2021. D.E. 159-2, p. 82. While the vaccine is not 100% effective at preventing infection, it substantially reduces the risk of serious illness or death from COVID-19, even in patients with high-risk medical conditions.

"Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit." *United States v. Reed*, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021). Courts in this district have repeatedly denied compassionate release to inmates who have been vaccinated against COVID-19, "finding that 'vaccination significantly reduces [the] risk of contracting COVID-19 or experiencing complications related to a COVID-19 infection.'" *United States v. Rodriguez*, 2021 WL 2635381, at *4 (S.D. Tex. June 25, 2021) (quoting *United States v. Beltran*, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (denying compassionate release to inmate with underlying health conditions who had received first vaccine dose)) (citing *United States v. Schad*, 2021 WL 1845548, at *3 (S.D. Tex. May 5, 2021) (denying compassionate release to 32-year-old inmate with aortic valve transplant and history of cerebrovascular disease who received both doses of the vaccine); then citing *United States v. Fisch*, 2021 WL 1537274, at *1 (S.D. Tex. Apr. 19, 2021) (denying compassionate release to high-risk inmate who was offered and refused the vaccine); then citing *United States v. Wedding*, 2:19-CR-1693 (S.D. Tex. Apr. 8, 2021) (denying compassionate release to inmate who

9

developed asymptomatic COVID-19 infection three weeks after receiving second vaccine)). Because Defendant is "at little-to-no risk of severe COVID-19 [] after receiving his second [vaccine] dose, there are no 'extraordinary and compelling reasons' justifying a compassionate release in this case." *See United States v. Groom*, 2021 WL 1220225, at *2 (S.D. Ohio Apr. 1, 2021).[2]

### B. Sentencing Guidelines Policy Statements and 18 U.S.C. § 3553(a) Factors

In its prior Order denying compassionate release, the Court wrote that it:

> cannot ignore that Defendant has been convicted as part of two major criminal conspiracies—the drug trafficking conspiracy in the current case and the alien smuggling conspiracy ranging from 2012 to 2014. During his current prison term, Defendant has also committed violations resulting in sanctions for possessing a "hazardous tool" on two occasions, for "disruptive conduct," and for "possessing an unauthorized item." *See* D.E. 171.[3]

> The Court finds that extraordinary and compelling reasons do not exist here and further finds that the § 3553(a) factors, as considered in the specific context of the facts of Defendant's case, do not warrant a reduction in his sentence. Specifically,

---

2. Decisions across the country overwhelmingly agree that the risk posed by COVID-19 to a vaccinated inmate is not an extraordinary and compelling reason for release. *See, e.g., United States v. Burks*, 2021 WL 1394857, at *3-4 (W.D.N.C. Apr. 13, 2021); *United States v. Gomez-Vega*, 2021 WL 1339394, at *3 (D.N.M. Apr. 9, 2021); *United States v. Burks*, 2021 WL 1291935, at *2 (D. Minn. Apr. 7, 2021); *United States v. Jones*, 2021 WL 1172537, at *2 (E.D. La. Mar. 29, 2021); *United States v. Miller*, 2021 WL 1115863, at *2 (E.D. Mich. Mar. 24, 2021); 2021 WL 1110593, at *1 (W.D. Pa. Mar. 23, 2021); *United States v. Decano*, 2021 WL 1095979, at *6 (D. Haw. Mar. 22, 2021); *United States v. Williams*, 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021); *United States v. Gabbard*, 2021 WL 1037724, at *3 (E.D. Mich. Mar. 18, 2021); *United States v. Kosic*, 2021 WL 1026498, at *2 (S.D.N.Y. Mar. 17, 2021); *United States v. Stewart*, 2021 WL 1011041, at *1 (D. Haw. Mar. 16, 2021); *United States v. Godoy-Machuca*, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021); *United States v. Williams*, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021); *United States v. Roper*, 2021 WL 963583, at *4 (E.D. Pa. Mar. 15, 2021); *United States v. Cardoza*, 2021 WL 932017, at *1 (D. Or. Mar. 11, 2021); *United States v. Poupart*, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021); *United States v. Johnson*, 2021 WL 863754, at *2 (W.D. Ky. Mar. 8, 2021); *United States v. Shepard*, 2021 WL 848720, at *5 (D.D.C. Mar. 4, 2021); *United States v. Lipscomb*, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021); *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Wakefield*, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021); *United States v. Ballenger*, 2021 WL 308814, at *4 (W.D. Wash. Jan. 29, 2021).

3. Since filing his last motion for compassionate release, Defendant was also disciplined by the BOP for possessing narcotics (amphetamines).

> releasing Defendant more than five years early would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense, nor would it deter criminal conduct or protect the public from further crimes.

2:15-cr-742-2(S), D.E. 173, p. 7.

Defendant does not move the Court to reconsider this decision, but instead offers the conclusory statement that "under all the circumstances in this case, the Court should conclude that the time Defendant has served in custody is sufficient to satisfy the purposes of sentencing" and that the § 3553(a) factors "weigh in favor of release because Defendant has already served a portion of his sentence." D.E. 156, pp. 20, 21.

Defendant has again failed to meet his burden to convince the Court to "exercise discretion to grant the motion for compassionate release after considering the Section 3553(a) factors." *See Ward*, 11 F.4th at 361. The Court further finds that, based on the nature and circumstances of the two separate offenses of conviction, the weight of the evidence, and the danger to the community that would be posed by Defendant's early release, a sentence reduction would not be consistent with the applicable Sentencing Guidelines' policy statements. *See* 18 U.S.C. § 3142(g); U.S.S.G. § 1B1.13(2).

## IV. CONCLUSION

For the reasons set forth above, as well as in the Court's prior Order denying compassionate release (2:15-cr-742-2(S), D.E. 173), which is incorporated by reference as if fully set forth herein, the Court finds that extraordinary and compelling reasons do not warrant a sentence reduction and that a reduction would be inconsistent with § 3553(a) and the applicable policy statements issued by the Sentencing Commission. Accordingly,

Defendant's Emergency Motion to Reduce the Term of Imprisonment Under Title 18 U.S.C.

Section 3582(c)(1)(A)(i) (D.E. 156) is **DENIED**.

**ORDERED** on _____5 | 26 | 22_____.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE